## JOHN B. WALKER v. STATE OF NEBRASKA.

FILED OCTOBER 1, 1895.    No. 6887.

1. **Homicide:** DEFENSE OF INSANITY: TRIAL. Where insanity or lunacy has not originated since the offense charged is alleged to have been committed, there is no requirement that the existence of such lunacy or insanity should be determined by a jury impaneled to determine whether or not the accused is of sound mind.

2. **Murder:** PENALTY. The offense charged having been committed before chapter 44, Session Laws, 1893, went into effect, it was not necessary that the jury in the verdict of guilty should fix the penalty which should be inflicted.

ERROR to the district court for Dawson county. Tried below before HOLCOMB, J.

*C. W. McNamar,* for plaintiff in error.

*A. S. Churchill, Attorney General,* and *George A. Day, Deputy Attorney General,* for the state.

RYAN, C.

Plaintiff in error was, in the district court of Dawson county, convicted of murder in the first degree. There was no controversy as to the fact of the homicide. The principal questions raised were as to the insanity of the accused when the act was committed and when the trial took place. When the arraignment was about to be had there was a showing of the probable unsoundness of the mind of the prisoner, to such an extent that he could not assist in the conduct of his defense, wherefore it was insisted that he should not be required to plead or enter upon his defense until a jury should be impaneled and a trial be had as to his insanity. Upon the showing made, including an examination by the court of the accused, the court found and entered of record his finding that "the defendant un-

derstands the nature of the charge made against him, and that he is competent to make his defense in the action and competent to plead to the information filed against him." The court further found that the question of the sanity of the accused was properly triable upon a plea to the information. This was on the 12th day of September, 1893, and on the 23d of November thereafter, immediately following, the court further found "that no other or different causes or reasons exist therefor [that is, as to prisoner's sanity] than heretofore presented to the court, that the alleged insanity, if existing, began and was existing prior to said homicide, and did not occur since the commission of the alleged homicide, and is a matter properly triable upon the main issue in the case." As facts, these findings were fully sustained by the evidence submitted. Counsel for the plaintiff in error cites but two sections of the statute in his argument upon the right to have tried by a jury the question of insanity before being compelled to plead to the information or make a defense against its charges. Of these sections the first cited (Criminal Code, sec. 553) applies solely to the sanity of the person under sentence of death. The other (Criminal Code, sec. 454) is limited to persons who become lunatic or insane after the commission of the offense. In each of these classes a jury trial must already have been had before insanity supervened so that otherwise than by the methods provided in the above sections no trial to a jury of the fact of his insanity or lunacy could be had by the person under conviction. Where, however, the alleged insanity or lunacy is claimed to have been in existence before trial upon information is begun, the legislature probably assumed that no provision for an independent trial of the question of sanity was necessary, therefore no such provision was made for such an independent trial. In the absence of such a provision of the statute we can perceive no reason which would justify the district court in submitting twice to a jury the question of

the insanity or lunacy of the person accused of a criminal offense. The evidence was not so clearly wanting to sustain the verdict of the jury, sanctioned as it was by the refusal of the district court to grant a new trial, that this court should interfere and by a reversal set aside the judgment of the district court, even though as an original proposition we might believe the plaintiff in error at the time of the homicide was of unsound mind.

All the instructions given were by the motion for a new trial, as well as by the petition in error, criticised in a single group. In a case of ordinary importance it would be sufficient to note this fact as affording a sufficient reason for disregarding this assignment if there was found in the group a single instruction not open to criticism. Treating this assignment, however, as a challenge of the correctness of the instructions as a whole, we are unable to agree with the counsel for the plaintiff in error in his somewhat technical criticisms. We have, however, gone a step further and have examined each instruction separately, and have been able to find no substantial ground of complaint in either of them.

It is insisted that the jury should have fixed the penalty in the verdict in accordance with the provisions of chapter 44, Laws, 1893. The provisions of that act in terms are restricted to any person who shall after its passage commit one of the crimes therein described. The act in question had no emergency clause and was approved April 8, 1893, so that at the time the homicide was committed (May 11, 1893) chapter 44 aforesaid was not yet in effect. There was, therefore, no requirement that the jury in this case should fix the penalty which should be inflicted upon the plaintiff in error. The judgment of the district court is

AFFIRMED.

January 10, 1896, fixed for the execution of the sentence imposed by the district court.